UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          CASE NO. 6:10-bk-03322-KSJ

HUDSON'S FURNITURE                              CHAPTER 11
SHOWROOM, INC.,
                                                EMERGENCY HEARING
                    Debtor.                     REQUESTED BY MARCH 5, 2010
_____/

## EMERGENCY MOTION OF THE DEBTOR-IN-POSSESSION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING

AND

## CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY PRELIMINARY HEARING

**HUDSON'S FURNITURE SHOWROOM, INC.** ("Showroom" or the "Debtor"), as the debtor and debtor-in-possession, by and through its undersigned counsel, and pursuant to 11 U.S.C. §§363(c)(2) and 363(e) and Federal Rule of Bankruptcy Procedure 4001(b)(1), hereby files its Emergency Motion for Authority to Use Cash Collateral and Request for Emergency Hearing (the "Motion"), and in support thereof states:

### Jurisdiction, Venue and Procedural History

1. On March 2, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). No trustee has been appointed. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. As of the date hereof, no creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4. The statutory predicates for the relief requested herein are Sections 361 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure.

## The Debtor and its Affiliated /Related Entities

5. Since 1982, the Debtor has been engaged in the business of selling furniture to consumers. The Debtor owns and operates several retail furniture stores located in Florida, including stores in the cities of Sarasota, Lakeland, Pinellas Park, Tampa, Brandon, Melbourne, Ormond Beach, Altamonte Springs, Ocoee, Orlando and Clearwater, Florida (the "Stores"). As such, Debtor has the authority and responsibility: (i) to determine operating policy, standards of operation, quality of products and services, the maintenance and physical appearance of the Stores and any other matters affecting operations and management of the Stores; (ii) to supervise and direct all phases of advertising, sales and promotion of the Stores; and (iii) to supervise the hiring, discharging, promotion and supervision of the staff of the Stores.

6. The Debtor rents the Stores from its affiliated and related entities which own the underlying real property (collectively, the "HUD LLCs"). The HUD LLCs are single member, single purpose Florida limited liability companies.

7. Overall, the Debtor employs approximately 156 people.

## Events Leading to Chapter 11 Filing

8.  The rapid decline in the economy has had a significant impact on the Debtor's business over the past six (6) months. Due largely to the decrease in sales, the Debtor has had difficultly servicing its debt, including, but not limited to, rent payments to the various HUD LLC entities. As a result, HUD LLCs have fallen behind in paying their respective mortgages.

9.  Despite its best efforts to salvage the Stores, the Debtor and its affiliated entities continue to suffer from the depressed economy and the resulting downward trend in furniture sales.

10.  Ultimately, the Debtor has determined that it is in the best interest of all parties to seek reorganization under Chapter 11.

## The Cash Management System

11.  Prior to the Petition Date, the Debtor maintained a complex cash management system through which the Debtor collected and accounted for all monetary receipts and disbursements (the "Cash Management System").

12.  The Cash Management System was developed over a lengthy period of time, and allows the Debtor to accurately track cash, checks, and cash equivalents received by and transferred from the Debtor.

13.  Debtor holds three primary accounts located with Floridian Bank (the "Floridian Account"), Wachovia Bank (the "Wachovia Account") and Gateway Bank (the "Gateway Account").

14.  The Floridian Account handles the following transactions for all of the Stores: (i) all credit card deposits (VISA, MasterCard, Discover and American Express); (ii) Wells

Fargo Financing Funds, which are funds received by the Debtor from sales that customers have financed through Wells Fargo (the Debtor is funded upon delivery of the merchandise and the customer is subsequently billed by Wells Fargo); and (iii) Telecheck Electronic Check Funds; and (iv) all operating checks, payroll and taxes.

15. The Wachovia Account handles checks paid by the Stores for regular expenses and cash on hand. Each Store has a Zero Balance Account that feeds into the Wachovia Account.

16. The Gateway Account provides the required cash reserve to secure the Letter of Credit for the Wells Fargo Financing funds.

17. In addition, each Store has a small petty cash fund that is reconciled monthly. Also, the manager of each Store utilizes a company credit card for other day-to-day business expenses.

## Cash Collateral and the Relief Sought by the Debtor

18. In its effort to successfully reorganize its business, it is essential that the Debtor continue, without interruption, operations which will require the use of funds on hand and funds to be received. Those funds may be subject to a lien in favor of Furniture Brands International, Inc. ("FBI") as discussed below.

19. The cash collateral, which the Debtor seeks to use, is comprised in whole or in part of funds on hand in the Floridian Account, Gateway Account, Wachovia Account and funds to be received from Debtor's rents and/or credit card payments in transit (the "Cash Collateral").

20. As a result of that certain UCC-1 filed and recorded on May 15, 2009 with the Office of the Florida Secretary of State and attached Exhibit "A" thereto in favor of FBI (the "FBI Lien"), FBI may assert that it holds a lien on Cash Collateral.

21. Debtor estimates that it owes FBI approximately $1,750,000.00 as of the Petition Date.

22. As of the Petition Date, the Debtor further estimates the total amount of funds available in the aforementioned accounts, including the cash on hand, totals $1,045,000.00. Furthermore, the Debtor estimates the value of the collateral upon which FBI has a lien, including, but not limited to, the Cash Collateral, is approximately $ 15,500,000.00.

23. The Debtor has very little cash on hand as a result of the Cash Management System, but the Debtor expects to collect sufficient funds to operate post petition on a positive cash flow basis. The Debtor anticipate that it will require the use of approximately $2,680,000.00 to continue and maintain operations for the next four weeks, and, depending on the month, a greater or lesser amount will be required each comparable period thereafter.

24. A budget showing estimated income and expenses for the Debtor for the next four weeks (the "Budget") is attached hereto as **Exhibit A** and is incorporated herein by reference. Based on the Budget, the Debtor anticipates that it will operate on a positive cash flow basis.

25. As adequate protection for the use of Cash Collateral, the Debtor proposes to grant FBI a replacement lien to the same validity, extent, and priority as its prepetition lien.

26. Debtor has been unable to obtain FBI's consent to use Cash Collateral, but asserts that the total value of the assets securing FBI's claim against the Debtor, including, but not limited to, inventory, equipment, accounts receivable, cash on hand and cash in the Cash Management System, exceeds the amounts owed by the Debtor to FBI. Consequently,

FBI's existing equity cushion and the replacement lien to the same extent, priority, validity, and priority as its pre-petition lien will adequate protect FBI's interest in the Cash Collateral.

Moreover, as evidenced by the Budget, the Debtor will operate on a cash flow positive basis over the proposed budget period.

27. If the Debtor is not permitted to use Cash Collateral, it may be forced to halt operations, which will result in loss of the going concern value of the business, a reduction in the value of the estate's assets and create an adverse effect on creditors and employees.

28. A copy of the proposed order authorizing use of Cash Collateral on an interim basis is attached hereto as **Exhibit B.**

## CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY PRELIMINARY HEARING

29. Operation of the Debtor's business requires the incurring of expenses on a daily basis.

30. The Debtor will be without funds to operate and meet expenses if an emergency preliminary hearing is not granted.

31. Customers, vendors, and employees have been at risk since the Petition Date and will continue to be at risk until a determination by this Court of the right to use Cash Collateral.

32. The Debtor estimates that approximately 15 minutes will be necessary for a hearing on this Motion and that a similar amount of time may be required for a final hearing.

33. A copy of this Motion was served on FBI, all secured creditors and on the twenty largest unsecured creditors, and the United States Trustee. Notice of a hearing on this matter will be provided to the same entities.

34. The Debtor and counsel are prepared to appear on three hours' notice at a hearing to demonstrate that the request for an emergency hearing is not the result of the Debtor's or counsel's procrastination or lack of attention.

**WHEREFORE,** the Debtor respectfully requests this Court enter an order granting the request for an emergency hearing, the request to use Cash Collateral, and for such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED** this 3rd day of March 2010.

/s/ Justin M. Luna, Esq.
R. Scott Shuker, Esquire
Florida Bar No. 984469
rshuker@lseblaw.com
Mariane L. Dorris, Esquire
Florida Bar No. 173665
mdorris@lseblaw.com
Justin M. Luna, Esquire
Florida Bar No. 0037131
jluna@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                    CASE NO. 6:10-bk-6:10-bk-03322-KSJ

HUDSON'S FURNITURE                        CHAPTER 11
SHOWROOM, INC.,

                  Debtor.
_____/

## Certificate of Service

    I HEREBY CERTIFY that a true copy of the **EMERGENCY MOTION OF THE DEBTOR-IN-POSSESSION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING AND CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY PRELIMINARY HEARING,** together with any and all exhibits, has been furnished by electronic transmission and/or U.S. First Class mail, postage prepaid, to: Hudson's Furniture Showroom, Inc., c/o C. Fred Hudson, III, 3290 W. SR 46, Sanford, FL 32771; Furniture Brands International, Inc., 1 N. Brentwood Blvd., Clayton, MO 63105; the secured creditors and the largest twenty (20) unsecured creditors, as shown on the matrices attached to the original motion filed with the court; and the U.S. Trustee, 135 West Central Blvd., Suite 620, Orlando, FL 32801, this 3rd day of March 2010.

                                          /s/ Justin M. Luna, Esq.
                                          Justin M. Luna, Esquire
                                          Florida Bar No. 0037131
                                          jluna@lseblaw.com
                                          **LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
                                          390 N. Orange Avenue, Suite 600
                                          Orlando, Florida 32801
                                          Telephone: 407-481-5800
                                          Facsimile: 407-481-5801
                                          Attorneys for the Debtor

Hudson's Furniture Showroom, Inc.
Secured Creditor Matrix
03-03-2010

American Drew
22814 Network Place
Chicago, Illinois 60673-1228

Bank of America, N.A.
9000 Southside Blvd.
Bldg. 100
Jacksonville, FL 32256

Best Chair, Inc.
1195 Solutions Center
Chicago, IL 60677-1001

Bradington Young
920 E. First Street
Chenyville, NJ 28021

Broyhill Furniture
P.O. Box 536753
Atlanta, Georgia 30353

Bernhardt Furniture Company
P.O. Box 740
Lenior, NC 28645-0740

Compass Bank
5500 SW College Road
Ocala, FL 34474

Florida Capital Bank
P.O. Box 551390
Jacksonville, FL 32255-1390

Furniture Brands Int'l, Inc.
1 N. Brentwood Blvd.
Clayton, MO 63105

GE Commercial Finance
P.O. Box 402363
Atlanta, GA 30384-2363

La-Z-Boy, Inc.
4310 Regency Dr.
Ste. 1010
Highpoint, NC 27265

Lane Furniture Industries
P.O. Box 1627
Tupelo, MS 38802

Leaf Funding, Inc.
1818 Market Street
9th Floor
Philadelphia, PA 19103

Planned Furniture Promotions
9 Moody Road, Bldg. D
Suites 17-18
Enfield, CT 06082

Republic Bank
1560 S. Renaissance Towne Drive
Suite 260
Bountiful, UT 84010

Summit Funding Group
11500 Northlake Drive
Suite 300
Cincinnati, OH 45249

Suntrust Bank
7455 Chancellor Drive
Orlando, Florida 32809

Suntrust Leasing Corp.
300 East Joppa Road
7th Floor
Towson, MD 21286

TCF Equipment Finance, Inc.
11100 Wayzata Blvd.
Suite 801
Minnetonka, MN 55305

Univest Capital, Inc.
3325 Street Road
Ste. 125
Bensalem, PA 19020

US Express Leasing, Inc.
10 Waterview Blvd.
Parsippany, NJ 07054

Wachovia Bank NA
P.O. Box 740502
Atlanta, GA 30374

Hudson's Furniture Showroom, Inc.
20 Largest Unsecured Creditor Matrix
03-03-2010

Action Industries
P.O. Box 536823
Atlanta Georgia 30353

American Drew
22814 Network Place
Chicago, Illinois 60673-1228

Best Chair, Inc.
1195 Solutions Center
Chicago, IL 60677-1001

Bradington Young
920 E. First Street
Chenyville, NJ 28021

Broyhill Furniture
P.O. Box 536753
Atlanta, Georgia 30353

Broyhill Furniture, Ind.
P.O. Box 536753
Atlanta, Georgia 30353

Centro Watt Operating Partnership Two
P.O. Box 933331
Atlanta, Georgia 30384-1587

CP Venture Two, LLC
P.O. Box 281587
Atlanta, Georgia 30384-1587

Developers Diversified
Dept. 108119-40416-00020896
P.O. Box 534414
Atlanta, Georgia 30353

FFVA Mutual Insurance Company
P.O. Box 918292
Orlando, Florida 32819

Glenn Byrne
248 Rosso Drive
Davenport, Florida 33896

Hooker Corp.
P.O. Box 404535
Atlanta, Georgia 30384-4535

Idearc Media Corp.
P.O. Box 619009
DFW Airport, TX 75261-9009

Jennifer Madill
1437 Milledge Lane
Davenport, FL 33896

Leaf Funding, Inc.
P.O. Box 6444006
Cincinnati, OH 45264-4006

Lexington Brands
P.O. Box 751221
Charlotte, NC 28275

Michel Wachter
2371 Eagle Talon Court
Kissimmee, FL 34746

Ryder
P.O. Box 402366
Atlanta, GA 30384-2366

Summit Funding Group
11500 Northlake Drive
Suite 300
Cincinnati, OH 45249

Tropitone
5 Macaroni
Irvine, CA 92618

# Cash Flow Forecast

| | 3/4- 03/07 | W/E 03/014 | W/E 03/21 | W/E 03/28 | TOTAL |
|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | 751,857 | 593,831 | 851,480 | 841,937 | |
| *Sources of Cash* | | | | | |
| DEPOSITS ON DELIVERY | 177,571 | 248,600 | 248,600 | 248,600 | 923,371 |
| DEPOSITS ON WRITTEN SALES | 342,900 | 480,060 | 480,060 | 480,060 | 1,783,080 |
| MISC DEPOSITS | 0 | 0 | 0 | 0 | 0 |
| NAPLES/PINEVILLE LIQUIDATION | 0 | 0 | 0 | 0 | 0 |
| MERCHANT RESERVE FUNDS | 0 | 0 | 0 | 0 | 0 |
| B'HILL/LANE DEFERAL | 0 | 0 | 0 | 0 | 0 |
| TOTAL CASH IN | 520,471 | 728,660 | 728,660 | 728,660 | 2,706,451 |
| *Uses of Cash* | | | | | |
| EXPENSES | | | | | |
| PROJ EXPENSES | (55,000) | (70,000) | (70,000) | (70,000) | (265,000) |
| CASH/CK CUSTOMER REFUNDS | (1,500) | (3,000) | (3,000) | (53,000) | (60,500) |
| BROYHILL/LANE | 0 | 0 | 0 | 0 | 0 |
| AMERICAN DREW | 0 | 0 | 0 | 0 | 0 |
| BROYHILL/LANE | 0 | 0 | 0 | 0 | 0 |
| AICO | (6,584) | (13,168) | (13,168) | (13,168) | (46,088) |
| AMERICAN DREW | 0 | 0 | 0 | 0 | 0 |
| LEXINGTON | 0 | 0 | 0 | 0 | 0 |
| ASPEN | 0 | 0 | 0 | 0 | 0 |
| BERKLINE | 0 | 0 | 0 | 0 | 0 |
| UNIVERSAL | 0 | 0 | 0 | 0 | 0 |
| BERNHARDT | 0 | 0 | 0 | 0 | 0 |
| BEST-CHAIR | 0 | 0 | 0 | 0 | 0 |
| SIMMONS | (2,826) | (5,652) | (5,652) | (5,652) | (19,782) |
| EMBASSY | (2,096) | (4,191) | (4,191) | (4,191) | (14,669) |
| CONTAINERS IN TRANSIT - CHEERS | 0 | 0 | 0 | 0 | 0 |
| CONTAINERS IN TRANSIT - BROYHILL | 0 | 0 | (41,594) | (41,594) | (41,594) |
| CONTAINERS IN TRANSIT - HTL | (97,000) | 0 | 0 | 0 | (97,000) |
| ALL OTHER VENDORS | (375,000) | (375,000) | (375,000) | (375,000) | (1,500,000) |
| Total Vendor Pay Current | 0 | 0 | 0 | 0 | 0 |
| BUSINESS CPR | 0 | 0 | 0 | 0 | 0 |
| ADVERTISING | (32,004) | 0 | (64,008) | 0 | (96,012) |
| HEALTH INSURANCE | (60,000) | 0 | 0 | 0 | (60,000) |
| PAYROLL SEMI-MONTHLY | 0 | 0 | 0 | (146,317) | (146,317) |
| PAYROLL TAXES | 0 | 0 | 0 | (46,579) | (46,579) |
| 401K | 0 | 0 | 0 | (4,375) | (4,375) |
| RESTRUCTURED RENT | 0 | 0 | 0 | (75,500) | (75,500) |
| RESTRUCTURED DEBT | 0 | 0 | 0 | 0 | 0 |
| BROYHILL 40% PAYDOWN | 0 | 0 | 0 | 0 | 0 |
| SALES TAX | 0 | 0 | (161,590) | 0 | (161,590) |
| BANK & CC CHARGES | (46,488) | 0 | 0 | 0 | (46,488) |
| TOTAL CASH OUT | (678,498) | (471,011) | (738,203) | (793,782) | (2,681,494) |
| ENDING CASH BALANCE | 593,831 | 851,480 | 841,937 | 776,814 | |

| | | | | |
|---|---|---|---|---|
| OVERALL CASH POSITION | 722,331 | 979,980 | 970,437 | 905,314 |
| GATEWAY BANK - RESTR CASH BAL | 128,500 | 128,500 | 128,500 | 128,500 |

EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  CASE NO. 6:10-bk-03322-KSJ

HUDSON'S FURNITURE  CHAPTER 11
SHOWROOM, INC.,

Debtor.
_____/

INTERIM ORDER AUTHORIZING DEBTOR-IN-POSSESSION'S
USE OF CASH COLLATERAL ON A PRELIMINARY BASIS
AND SCHEDULING FINAL EVIDENTIARY HEARING

(Final Evidentiary Hearing Scheduled for _____ at __:__)

**THIS CASE** came on for emergency hearing _____, 2010 ("Hearing") on the Emergency Motion of the Debtor-in-Possession to authorize the use of cash collateral ("Motion"), filed on March 3, 2010 (Doc. No. ___). The hearing was scheduled as an emergency preliminary hearing on the Motion pursuant to Federal Rule of Bankruptcy Procedure 4001(b).

Upon consideration of the Motion, the Court having heard and considered statements of counsel for the Debtor and other evidence tendered at the Hearing with respect to the Motion, and the Court having concluded that entry of this Order is in the best interests of the Debtor, its creditors and estate and is necessary to avoid immediate and irreparable harm to the Debtor and its estate; it is hereby

**ORDERED:**

1. The Motion is granted on a preliminary basis to the extent provided herein.

2. The authority granted hereunder shall continue **until _____ at _____ a.m., at which time the Court will hold a final evidentiary hearing** on use of cash collateral, at which the Court may authorize continued use of cash collateral.

3. The Debtor shall not use, sell, or expend, directly or indirectly, the cash collateral" of FBI as that term is defined in § 363(a) of the Bankruptcy Code, the ("Cash Collateral"), except upon the terms and conditions set forth in this Interim Order. The Debtor may use Cash Collateral solely to pay the expense items set forth on the budget attached to the original of the Motion as **Exhibit A** (the "Budget"), subject to a 15% (by line items and in the aggregate) variance; provided, however, no amounts may be expended for prepetition debt without a prior order of the Court. The Debtor may vary from the Budget only upon the prior written approval of FBI.

4. This order is entered without prejudice to any other rights of the Debtor, FBI and any creditors' committee appointed in this case.

5. FBI asserts a lien on the Cash Collateral. Accordingly, as adequate protection to FBI's rights and interests, FBI is hereby granted a replacement lien on all of the assets and property acquired by the Debtor's estate or by the Debtor (the "Post-Petition Collateral") on and after the date on which the Debtor filed its voluntary petition (the "Petition Date"). The post-petition lien and security interest in the Post-Petition Collateral granted to FBI, pursuant to this Interim Order, shall be valid and perfected to the same extent, validity, and priority as its prepetition lien, effective as of the Petition Date, without the need for the execution or filing of any future document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law.

6. The Debtor's use of Cash Collateral, to the extent and on the terms and conditions set forth herein, is in the best interests of creditors and of the estate.

7. **A FINAL EVIDENTIAY HEARING ON USE OF CASH COLLATERAL IS SCHEDULED FOR _____ AT \_\_\_\_\_ A.M. BEFORE THE HONORABLE KAREN S. JENNEMANN IN COURTROOM B, U. S. BANKRUPTCY COURT, 135 W. CENTRAL BOULEVARD, ORLANDO, FLORIDA.**

**DONE AND ORDERED** on

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies to:

Attorneys for the Debtor: R. Scott Shuker, Esq. and Justin M. Luna, Esq., Latham, Shuker, Eden & Beaudine, LLP, 390 N. Orange Avenue, Suite 600, Orlando, Florida 32801;

Furniture Brands International, Inc., 1 N. Brentwood Blvd., Clayton, MO 63105; and

Local Rule 1007-2 parties-in-interest list; and

U.S. Trustee, 135 West Central Blvd., Suite 620, Orlando, FL 32801