# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

**CHAPTER 11**

**CASE NO. 6:10-bk-03322-KSJ**

**HUDSON'S FURNITURE
SHOWROOM, INC.,** *et.al.*

**Jointly Administered
Case Nos. 6:10-bk-3543 thru 3549**

Debtors.

_____/

## AMENDED JOINT PLAN OF REORGANIZATION
## SUBMITTED BY HUDSON'S FURNITURE SHOWROOM, INC. *ET AL.*

COUNSEL FOR DEBTORS

R. SCOTT SHUKER, ESQ.
VICTORIA KOTHARI, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA, 32801

September 24, 2010

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          **CHAPTER 11**

**HUDSON'S FURNITURE**                          **CASE NO. 6:10-bk-03322-KSJ**
**SHOWROOM, INC.,** *ET AL.*
                                Debtors.        **Jointly Administered**
_____/         **Case Nos. 6:10-bk-5345 thru3549**

**AMENDED JOINT PLAN OF REORGANIZATION**
**SUBMITTED BY HUDSON'S FURNITURE SHOWROOM, INC.,** *ET AL.*

**HUDSON'S FURNITURE SHOWROOM, INC.,** *ET AL.* ("Debtors"), by and through

their undersigned counsel, hereby propose the following amended joint plan of reorganization

("Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. § 101, *et seq*.

**ARTICLE I. - DEFINITIONS**.

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a

kind specified in § 503(b) of the Code, and of a kind referred to in § 507(a)(1) of the Code,

including, without limitation, the actual, necessary costs and expenses incurred after the

commencement of the Chapter 11 Case of preserving Debtors' Estates and operating the

businesses of Debtors, including, wages, salaries, or commissions for services, compensation for

legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the

Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United

States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative

Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar

Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of § 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed pursuant to § 1111(a) of the Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtors with the Bankruptcy Court pursuant to § 521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtors, or the Reorganized Debtor, on or before the Claims Objection Bar Date, until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order.    Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

3

**Allowed Interest** shall mean an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) scheduled in the list of equity security holders prepared and filed by Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to Code § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes as Allowed Claim.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Cases** shall mean the bankruptcy cases of the Debtors, each of which are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

4

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtors' Chapter 11 Cases are pending, and any Bankruptcy Court having jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Estates** shall mean the Estates created pursuant to § 541 of the Code by the commencement of Debtors' Chapter 11 cases and shall include all property of the Estates as defined in such Section.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

**Broyhill** shall mean claims of Furniture Brands International and its subsidiaries with respect to invoicing to HFS for goods sold and which amounts due are secured by Lien.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close or any day designated as a legal holiday pursuant to Bankruptcy Rule 9006 (a).

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Cash Flow Note** shall mean the note issued in favor of Holders of Allowed Class 12 Claims. The Cash Flow Note shall be in the face amount of the total Allowed Class 12 Claims. Payment terms shall be as described in the treatment for Class 12. Payments under the Cash Flow Note will be based on the Operating Budget and the note will not bear interest.

**Causes of Action** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtors:  (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-554 (or equivalent provisions of applicable non-bankruptcy laws); and (b) all

5

claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Debtors' schedules or statement of financial affairs, any pleadings filed in these Chapter 11 cases, and (c) the Debtors' rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Claim(s)** shall mean any right(s) to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Claim Objection Bar Date** shall mean one hundred twenty (120) days after the Confirmation Date, which shall be the last date on which the Reorganized Debtor can object to any Claim.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which a Claim or Interest is classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

**Compass** shall mean Compass Bank.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1129 of the Code.

6

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code.

**Confirmation Rate** shall mean 30-day LIBOR + 250 basis points with a floor of 4% and a ceiling of 6% (adjusted monthly).

**Creditor** shall have the same meaning as set forth in § 101(1) of the Code.

**Debtor(s)** shall mean collectively, or as may be applicable to certain provisions of the Plan, any of HFS and the entities listed on **Exhibit "A"**.

**Disclosure Statement** shall mean the Amended Joint Disclosure Statement approved for distribution by the Bankruptcy Court pursuant to § 1125 of the Code together with any amendments or modifications thereto.  In the event of any inconsistency between the Plan and Disclosure Statement, the Plan controls.

**Disputed Claim** shall mean a Claim against Debtors, or any Debtor, which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Effective Date** shall mean a date thirty (30) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; provided, however, that the Effective Date shall not occur until Debtors file the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met.  In the

7

event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the notice has been filed.

**Equity Interests** shall mean any and all authorized membership interests, common stock, stock options and warrants, and other equitable interests in any of the Debtors, or Reorganized Debtor.

**Estates Assets** shall mean all the assets, property and cash of the Debtors, as defined in § 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or other review is pending.

**Fiscal Year** shall mean the fiscal year of Debtors, which commences on the first day of May and concludes on the final day of April in the next calendar year.

**Florida Capital** shall mean Florida Capital Bank, N.A.

**GE** shall mean GE Commercial Finance.

**HFS** shall mean Hudson's Furniture Showroom, Inc.

**HUD-1** shall mean Hud-One, LLC.

**HUD-3** shall mean Hud-Three, LLC.

**HUD-6** shall mean Hud-Six, LLC.

**HUD-10** shall mean Hud-Six, LLC.

**HUD-22** shall mean Hud-Twenty-Two, LLC.

8

**HUD-24** shall mean Hud-Twenty Four 445 S. Yonge, LLC.

**HUD-27** shall mean Hud-Twenty-Seven Mason, LLC.

**HUD Properties** shall mean, collectively, the commercially developed real estate parcels as listed in **Exhibit "B"** owned by the Debtors in the central Florida area and presently occupied by HFS, an affiliated and related debtor.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are impaired within the meaning of § 1124 of the Code.

**Insider** shall have the same meaning as set forth in § 101(31) of the Code.

**Intellectual Property** shall mean any and all pending, registered, common law and any other U.S. and foreign intellectual property of the Debtors, including, but not limited to all copyrights, patent rights, trademark rights, service mark rights, trade dress rights, interest domain names, world wide web sites and all pages thereof, know-how, trade secret rights, proprietary or confidential technical information, procedures, formulae, databases, data skill, expertise, experience, materials, customer lists, licenses, information and other proprietary rights and processes, object and source codes, software and registration rights and similar rights under corresponding foreign laws, whether now or hereafter owned by the Debtors or which any person is under an obligation to assign to the Debtors, and all goodwill, improvements and modifications related thereto.

**Intercompany Claim** shall mean any claim by a Debtor against another Debtor or any account reflecting intercompany book entities.

**Interest(s)** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtors.

**IRS** shall mean the Internal Revenue Service.

**La-Z-Boy** shall mean claims of La-Z-Boy Incorporated and its subsidiaries with respect to invoicing to HFS for goods sold and which amounts due are secured by Lien.

**LIBOR** shall mean the one-month London Interbank Offering Rate, as published in the Wall Street Journal from time to time

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtors, the Reorganized Debtor, or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Operating Budget** shall mean the budget/proforma attached as **Exhibit "D"** to the Disclosure Statement.   The Operating Budget may be amended at any time prior to the Confirmation Hearing.

**Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Person** shall mean an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean March 3, 2010, the date on which the Debtors filed their voluntary petitions for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Reorganized Debtor, pursuant to the terms of the Plan, including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such Claim is entitled to priority in payment under §507 of the Code.

**Priority Tax Claim** shall mean a Claim of a governmental unit other than an Administrative Claim to the extent such Claim is entitled to priority in payment under §507(a)(8).

**Professional** shall mean: (i) any professional retained in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Section 1129(a)(4) of the Bankruptcy Code.

*Pro Rata* shall mean as to any Allowed Class 12 claims as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of (i) the numerator of which is the amount of such Allowed Class 12 Claim and (ii) the denominator of which is the sum of (x) all Allowed Class 12 Claim as of such date plus (y) all Disputed Class 12 Claims as of such date.

**Property** shall have the same meaning as the term "property of the estate" delineated in § 541 of the Code.

**Regions** shall mean Regions Bank.

**Reorganized Debtor** shall mean the HFS, as successor to the Debtors, which is created upon the Effective Date pursuant to the Plan. The owners and managing members of the Reorganized Debtor shall be as set forth in the Plan.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy laws. A Secured Claim which is challenged by the Debtors, or Reorganized Debtor, shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. § 101(51).

**Subordinated Lien** shall mean a Lien on an asset which is subject to all valid, existing and perfected Liens on such asset.

12

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under § 507(a)(8) of the Code.

**Term Letter** shall mean the Term Letter, dated August 10, 2010 by and between the Debtors and Wells Fargo, which, in relevant part, sets forth Wells Fargo's Allowed Secured Claim, its Allowed Unsecured Claim, modifies repayment terms under the original note, and sets forth treatment of its Secured and Unsecured Claims.

**Transferred Properties** shall mean those properties listed on **Exhibit C** to the Disclosure Statement.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtors, or Reorganized Debtor, unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of §1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, or an Administrative Claim or Intercompany Claim, and, except as an to the extent otherwise provided herein, shall include, without limitation the deficiency claims, if any, of any holder of a Secured Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq*. and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**VCC** shall mean Valley Commercial Capital.

**Wells Fargo** shall mean Wells Fargo Bank N.A. as successor-by-merger to Wachovia Bank, N.A.

**7976** shall mean 7976 Properties, Inc.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.      Class 1 – Wells Fargo Bank, N.A.

Class 1 consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo"[1]). The Claim is secured by liens on real property of the Debtors and of C. Fred Hudson, III, the C. Fred Hudson III Trust, and the Catherine J. Hudson Trust (collectively the "Wells Fargo Bank Property"),[2] described in the forbearance agreement (the "Forbearance Agreement"), as well as by guaranties of HFS, C. Fred Hudson, III and the C. Fred Hudson III Trust.

B.      Class 2 – 7976 Properties, Inc.

Class 2 consists of the Allowed Secured Claim of 7976 Properties, Inc. ("7976"). The Claim is allegedly secured by a lien on real property of Hud-Twenty-Four 445 S.Yonge, LLC (the "7976 Property"). The 7976 Property shall be transferred to Reorganized Debtor, and 7976 shall retain its lien to the same extent, validity, and priority as existed on the Petition Date.

C.      Class 3 – Florida Capital Bank, N.A.

Class 3 consists of the Allowed Secured Claim of Florida Capital Bank, N.A. ("Florida Capital"). The Claim is secured by liens on real property of the Debtors (collectively,

---

[1] F/k/a Wachovia Bank, N.A. Wells Fargo Bank N.A. is successor-by-merger to Wachovia Bank, N.A. To avoid confusion in this Disclosure Statement we shall refer to this lender as Wells Fargo.

[2] As of the Petition Date, there were seven (7) separate Wells Fargo loans (the "Wells Fargo Loans") outstanding.

14

the "Florida Capital Bank Property"). Florida Capital shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

      D.      <u>Class 4 – Regions Bank</u>.

      Class 4 consists of the Allowed Secured Claim of Regions Bank ("Regions"). The Claim is secured by a lien on real property of Hud-Six, LLC (the "Regions Bank Property"). Regions shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

      E.      <u>Class 5 – GE Commercial Finance</u>.

      Class 5 consists of the Allowed Secured Claim of GE Commercial Finance ("GE"). The Claim is secured by a lien on real property of Hudson Furniture Showroom, Inc. at 28342 US Hwy 19N, Clearwater, Florida (the "GE Bank Property"). GE shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

      F.      <u>Class 6 –Compass Bank</u>.

      Class 6 consists of the Allowed Secured Claim of Compass Bank ("Compass"). The Claim is secured by a lien on real property of Hudson Furniture Showroom, Inc. at 3290 W. SR 46, Sanford, Florida (the "Compass Bank Property"). Compass shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

      G.      <u>Class 7 – Furniture Brands International - Broyhill</u>.

      Class 7 consists of the Allowed Secured Claim of Furniture Brands International – Broyhill ("Broyhill")[3]. The Claim is secured by a lien on, among other things, accounts receivable and inventory of HFS (collectively, the "Broyhill Security"). Broyhill shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

---

[3] Pursuant to order of the Bankruptcy Court, Broyhill shall have a perfected first priority lien and security interest in the amount of at least $1,585,753.20. (HFS, Doc.No. 225).

H.    Class 8 – La-Z-Boy Incorporated – La-Z-Boy.

Class 8 consists of the Allowed Secured Claim of La-Z-Boy Incorporated and its subsidiaries – La-Z-Boy ("La-Z-Boy"). The Claim is secured by a lien on, among other things, inventory and related accounts receivable of HFS (collectively, the "La-Z-Boy Security"). La-Z-Boy shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

I.    Class 9 –Valley Commercial Capital.

Class 9 consists of the Allowed Secured Claim of Valley Commercial Capital. The Claim is secured by a lien on, among other things, a 2000 Pilatus Model PC-12 Plane (the "Plane") owned by Hud-Ten, LLC. Valley shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

J.    Class 10 – County Tax Collectors.

Class 10 consists of the Allowed Secured Claims of the County Tax Collectors ("Tax Collectors"), which are secured by a first priority Liens on the respective Debtors' real property as set forth in **Exhibit "B"** (the "Real Property"). The Holders of Allowed Class 10 Claims shall retain their liens to the same extent, validity, and priority as existed on Petition Date.

K.    Class 11 – Tax Certificate Holders.

Class 11 consists of the Allowed Secured Claims of the Plymouth Park Tax Services, LLC which holds Tax Certificates on properties owned by HUD-3 and HUD-24. The Holders of Allowed Class 11 Claims shall retain its lien to the same extent, validity, and priority as existed on Petition Date.

L.    Class 12 – Allowed Unsecured Claims

Class 12 consists of all of the Allowed Claims of Unsecured Creditors.

M.      <u>Class 13 – Hudson's Furniture Showroom, Inc.</u>

        Class 13 consists of any and all Equity Interests in this Debtor.

N.      <u>Class 14 – Hud-One, LLC.</u>

        Class 14 consists of any and all Equity Interests in this Debtor.

O.      <u>Class 15 – Hud-Three, LLC.</u>

        Class 15 consists of any and all Equity Interests in this Debtor.

P.      <u>Class 16 – Hud-Six, LLC.</u>

        Class 16 consists of any and all Equity Interests in this Debtor.

Q.      <u>Class 17 – Hud-Ten. LLC.</u>

        Class 17 consists of any and all Equity Interests in this Debtor.

R.      <u>Class 18 – Hud-Twenty-Two, LLC.</u>

        Class 18 consists of any and all Equity Interests in this Debtor.

S.      <u>Class 19 – Hud-Twenty-Four 445 S. Yonge, LLC.</u>

        Class 19 consists of any and all Equity Interests in this Debtor.

T.      <u>Class 20 – Hud-Twenty-Seven Mason, LLC.</u>

        Class 20 consists of any and all Equity Interests in this Debtor.


**ARTICLE III - ADMINISTRATIVE EXPENSES**.

      A.      <u>Administrative Claims.</u>
           1.      <u>Nonordinary Course Administrative Claims.</u>

                a.      Any person, including any professional who has rendered services to the Debtors during the course of the Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the

Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Expense Claim shall bar such a claimant from seeking recovery on such Claim.

        b.      Each holder of a Nonordinary Course Administrative Claim of the Debtors, or Reorganized Debtor, shall be paid by the Debtors one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court. Nothing in this provision of the Plan shall preclude the Debtors, or Reorganized Debtor, from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

        2.      <u>Ordinary Course Administrative Claims</u>.

        Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtors in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an

18

application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

B.    Priority Tax Claims.

Except to the extent that the Holder and the Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim (not secured) shall be paid by the Debtors, or the Reorganized Debtor, payments equal to the Allowed Priority Tax Claim, which will be paid based on a five (5) year amortization and maturity with interest at the applicable statutory rate; the payments will be made quarterly. Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed. The Debtors estimate that the filed amount of Priority Tax Claims is approximately $50,000.

### ARTICLE IV - TREATMENT OF UNIMPAIRED CLASSES.

All Classes of Claims and Interests are impaired under the Plan.

### ARTICLE V - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

A.    Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtors, or Reorganized Debtor, reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or

other equitable relief. The Reorganized Debtor will be responsible for of all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

B.      Class 1 – Wells Fargo Bank, N.A.

Wells Fargo is hereby deemed to have: (i) an Allowed Class 1 Secured Claim, and (ii) an Allowed Class 12 Unsecured Claim in the respective Allowed Amounts set forth below.

In full satisfaction of its Allowed Class 1 Claim:

(i)     Wells Fargo shall have received, pursuant to the Order Granting Hudson Furniture Showroom, Inc., *et al.'s* Motion for Approval of Adequate Protection Agreement with Wells Fargo Bank, N.A. (HFS, Doc. No. 185), free and clear of any liens and encumbrances except for ad valorem real property taxes, certain of the Debtors' and Hud-14, LLC's mortgaged properties, listed on **Exhibit "C"** (the "Transferred Properties"); and

(ii)    Wells Fargo shall apply the value of the Transferred Properties (as of the Confirmation Date) as payment in full of Hud-One, LLC's obligation (the "Hud-1 Loan") to Wells Fargo; and

(iii)   Wells Fargo shall retain all notes and related documentation (the "Wells Fargo Notes"), guaranties, mortgages and related documentation (the "Wells Fargo Mortgages"), and liens with respect to Wells Fargo's existing loans, excepting only the Hud-1 Loan which shall be deemed satisfied by receipt of the Transferred Properties, which shall remain in

20

place, and which terms shall remain unchanged, except as otherwise modified herein and in the Forbearance Agreement and related documentation;

(iv)    Regarding the Allowed Class 1 Secured Claim, after accounting for the Transferred Properties the Allowed Secured Claim shall be in the amount of $18,910,000.00 as adjusted by (a) and (b) below (the "Wells Fargo Obligation"):

a.    the Allowed Secured Claim shall include certain fees and expenses, as of the Confirmation Date, incurred by Wells Fargo with respect to each of its loans, but not to exceed the amount by which Wells Fargo is oversecured as to each respective loan; and

b.    the Allowed Secured Claim shall include post-petition interest, as of the Confirmation Date, at the applicable original contract rate, with respect to each Wells Fargo Note, but not to exceed the amount by which Wells Fargo remains oversecured as to each respective loan after accounting for the adjustments listed in (a).

On the Effective Date and pursuant to the Plan, the Debtors and C. Fred Hudson, III and the C. Fred Hudson III Trust shall execute and deliver the Forbearance Agreement and such other agreements, instruments and documents as contemplated by that certain Term Letter dated August 10, 2010 (the "Term Letter"), or appropriate, and as Wells Fargo may request in connection with the delivery of the Forbearance Agreement provided therein, all of which shall be in form and substance satisfactory to Wells Fargo. A copy of the Forbearance Agreement and

21

the Term Letter shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.  In the event of a conflict between (i) the Forbearance Agreement and all agreements contemplated by the Forbearance Agreement and (ii) the Plan, the former controls.

Pursuant to the Plan and the Forbearance Agreement, Wells Fargo shall receive for the Wells Fargo Obligation fixed monthly payments of $75,000.00 of principal and interest at the Confirmation Rate for forty-eight (48) months with a balloon payment (the "Balloon") at the end of month forty-eight (48).  In the event of a default, interest shall accrue at a default rate and late fees shall apply as provided in the Forbearance Agreement.  Provided there has not been a default, payments shall be applied first to accrued but unpaid interest and then to all or any of the loans comprising the Wells Fargo Loans as Wells Fargo may determine.  To the extent interest in any month exceeds $75,000.00, the excess interest shall be added to the amount of the Wells Fargo Obligation and shall be due and payable at the time of the Balloon.  Supplemental to the existing guaranties that will be ratified, Wells Fargo shall also receive unconditional guaranties from C. Fred Hudson, III and the C. Fred Hudson III Trust for the full amount of the Wells Fargo Obligation and a corrective mortgage from the Catherine J. Hudson Trust for the property located at 430 S. Yonge Street, Ormond Beach, Florida.  Pursuant to the Forbearance Agreement, the Reorganized Debtor, HFS, shall assume all of the Wells Fargo Loans except for the Hud-1 Loan.

Regarding the Allowed Class 12 Unsecured Claim, Wells Fargo shall receive an Allowed Unsecured Claim in the amount of $4,884,691.52 (referred to in the Term Letter as the Wells Fargo Cash Flow Note).  Supplemental to the existing guaranties that will be ratified, Wells Fargo shall also receive unconditional guaranties from C. Fred Hudson, III and the C. Fred

Hudson III Trust for the full amount of the Allowed Class 12 Unsecured Claim.  C. Fred Hudson, III and the C. Fred Hudson III Trust shall assume joint and several liability for the balance owed for the Allowed Class 12 Unsecured Claim, if any, at the end of forty-eight (48) months after the effective date of confirmation of the Plan.

Forty-eight (48) months after the Effective Date, the Reorganized Debtor shall no longer be obligated for the Allowed Class 12 Unsecured Claim.  So long as the Allowed Class 12 Unsecured Claim is outstanding during the forty-eight (48) month Plan period, the Reorganized Debtor shall operate pursuant to a the Operating Budget which shall be acceptable to Wells Fargo.  If the Reorganized Debtor generates net income greater than the budgeted amount for any given quarter (the "Surplus Funds"), then 75% of the Surplus Funds shall be apportioned and paid to the Holders of Allowed Claims, including Wells Fargo, on a *pro rata* basis.  All remaining Surplus Funds shall be retained by the Reorganized Debtor as a cash reserve (the "Cash Reserve") and shall not be distributed in any manner, including for any dividends to equity.  The Cash Reserve shall be used only for the purpose of making Plan Payments during any quarter where net proceeds are insufficient to enable the Reorganized Debtors to make such payments.  At the end of forty-eight (48) months after the Effective Date, any outstanding amounts remaining with respect to the Allowed Class 12 Unsecured Claim shall be added to the Wells Fargo Obligation (the "Cash Flow Note Rollover"), and continue to be secured by all mortgaged properties, in form and substance satisfactory to Wells Fargo. The Balloon regarding the Wells Fargo Obligation shall include (i) all principal, interest, and fees outstanding under the Plan for the Wells Fargo Obligation and (ii) the Cash Flow Note Rollover amount, if any.  If the Balloon is paid on these terms in month forty-eight (48), Wells Fargo release all Wells Fargo Mortgages; provided, however, if the Release Price (defined below) is paid prior to the Balloon

as noted *supra*, the Cash Flow Note Rollover will not become due with such satisfied as set forth in Class 12.

Wells Fargo shall forbear from exercising any of its rights and/or remedies against C. Fred Hudson III and/or the C. Fred Hudson III Trust so long as no default occurs and as further articulated in the Forbearance Agreement and subject to the conditions and limitations provided therein.

There will be no release or modification of the Wells Fargo Loans and the Reorganized Debtor, C. Fred Hudson, III and the C. Fred Hudson III Trust shall continue to comply with the requirements of the loan documents for the Wells Fargo Loans. In that regard:

    (i)    the Reorganized Debtor shall remain current on all taxes, subject to challenges by the Debtors for market conditions and taxing authority's property valuation;

    (ii)    the Reorganized Debtor shall remain current on all appropriate insurance policies to the extent obligated, list Wells Fargo as a loss payee, and provide proof of the same to Wells Fargo;

    (iii)    the Reorganized Debtor, the Debtors, C. Fred Hudson III and the C. Fred Hudson III Trust shall represent and warrant that no other secured creditors are receiving payments of assets or other items of value of any kind outside of the Plan from any of the Debtors, C. Fred Hudson, III and the C. Fred Hudson III Trust or their respective affiliates and/or entities in which they have a direct or indirect ownership interest. A separate affidavit to this effect shall be executed by the Reorganized Debtor, the Debtors, C. Fred Hudson, III and the C. Fred Hudson III Trust;

(iv)    the Reorganized Debtor, the Debtors, C. Fred Hudson, III and the C. Fred Hudson III Trust shall agree that any applicable statutes of limitations with respect to any claims that Wells Fargo has or may have as to the Debtors, C. Fred Hudson, III or the C. Fred Hudson III Trust shall be tolled effective as of the date of payment defaults on the Wells Fargo Notes;

(v)    the Debtors, C. Fred Hudson, III and the C. Fred Hudson III Trust shall provide, within seven (7) days of the request of Wells Fargo, all documentation and information (including financial statements, tax returns, etc.) necessary for Wells Fargo to evaluate (i) the financial condition of the Reorganized Debtor, the Debtors, C. Fred Hudson, III and the C. Fred Hudson III Trust, and (ii) the Reorganized Debtor's, the Debtors', C. Fred Hudson, III's and the C. Fred Hudson III Trust's overall financial structure and credit worthiness.  In the event the documents are voluminous, this obligation may be satisfied by making the documents available for inspection and copying at a location acceptable to Wells Fargo;

(vi)    for a period of four and a half years from the date of confirmation of the Plan, C. Fred Hudson, III and the C. Fred Hudson III Trust shall not engage in any transaction or other activity or conduct that results or may result in a material adverse change in financial condition which include, but are not limited to, transfers of any assets outside of the ordinary course of business by C. Fred Hudson, III and/or the C. Fred Hudson III Trust or any entity which C. Fred Hudson, III and/or the C. Fred Hudson III Trust

25

directly or indirectly controls without the prior approval of Wells Fargo; and

(vii)    the Reorganized Debtor, the Debtors, C. Fred Hudson, III and the C. Fred Hudson III Trust shall provide Wells Fargo with a general release as of the Effective Date of the Plan.

The Reorganized Debtor shall have an option to refinance the Wells Fargo Notes, in full, at any time prior to the end of forty-eight (48) months after the Effective Date and subject to, in part, the following terms and conditions set forth herein and as further articulated in the Forbearance Agreement:

(i)    the Reorganized Debtor shall pay Wells Fargo a refinance option release price (the "Release Price") which shall equal the greater of (a) $15,600,000.00 or (b) eighty percent (80%) of the collective net value (the "Collective Net Value") of all properties subject to the Wells Fargo Mortgages. The Collective Net Value shall be based on appraisals deemed acceptable to Wells Fargo in its sole discretion;

(ii)    Wells Fargo shall release the Wells Fargo Mortgages upon delivery of funds equal to the Release Price;

(iii)    after delivery of the Release Price, the Reorganized Debtor shall execute a new note (the "New Note") and related documentation upon terms acceptable to Wells Fargo to evidence any excess amounts owed to Wells Fargo on the Allowed Class 1 Claim above the Release Price on the Wells Fargo Obligation (the "Remaining Debt"). The New Note shall be payable by the Reorganized Debtor and shall be amortized over a period

26

of ten (10) years with one hundred and twenty (120) even monthly payments of principal and shall require monthly interest payments at the Confirmation Rate;

(iv)    as security for the New Note, the Reorganized Debtor shall execute a security agreement and grant Wells Fargo a security interest in all inventory and accounts then owned and subsequently acquired, and all proceeds of such inventory and accounts, subject only to the Allowed Class 7 and 8 Claims and as to the purchase money security interest of any inventory supplier (the "Security Interest");

(v)    in connection with the New Note, C. Fred Hudson, III and the C. Fred Hudson, III Trust shall execute additional unconditional guaranties for the full amount of the New Note;

(vi)    the Reorganized Debtor shall continue to service the debt obligation of the Allowed Class 12 Unsecured Claim through the period of the Plan; however: (i) if the Release Price option has not been exercised, the balance owed on the Allowed Class 12 Unsecured Claim shall be rolled into the Wells Fargo Obligation, subject to the Wells Fargo Mortgages and paid in full during month forty-eight (48); or (ii) if the Release Price option has been exercised, then the Reorganized Debtor shall be released from any further responsibility for payments as to the Allowed Class 12 Unsecured Claim. The foregoing notwithstanding, C. Fred Hudson, III and the C. Fred Hudson III Trust shall remain liable for any amounts owed

27

on the Allowed Class 12 Unsecured Claim and such amount shall be deemed due and payable therefrom; and

(vii)    C. Fred Hudson, III and the C. Fred Hudson III Trust shall remain jointly and severally liable for the balance owed for the Allowed Class 12 Unsecured Claim, together with any amounts owed under the New Note.

Reorganized Debtor, the Debtors, C. Fred Hudson, III, the C. Fred Hudson, III Trust and any other related party that Wells Fargo might require documentation from ("Debtor Parties") shall execute such documentation as Wells Fargo may require, including but not limited to the Forbearance Agreement, promissory notes, security agreements, mortgage documents, guaranties, agreements and affidavits. The documentation shall contain such waivers, releases, estoppels, confirmations and other information as Wells Fargo may require. All documentation must be satisfactory in form and substance to Wells Fargo and its counsel. Additionally, Debtor Parties shall restate and remake each covenant, representation and warranty contained in the existing loan documents and shall further admit to having no defenses, setoffs, claims or counterclaims to the enforcement of the loan documents and shall expressly waive and release any defenses, offsets, claims or counterclaims to the enforcement thereof, whether known or unknown. Without limiting the foregoing, at the sole discretion of Wells Fargo, the transactions contemplated shall be documented in such fashion as Wells Fargo determines (e.g. any references to "notes" shall not obligate Wells Fargo to accept a note but may be documented as Wells Fargo shall direct).

C.    Class 2 – 7976 Properties, Inc.

In full satisfaction of its Allowed Class 2 Claim, 7976 shall retain its lien as stated above and receive a new secured note (the "7976 Note") in the amount of the Allowed Class 2

Claim. The new note shall be paid through the proceeds of core operations. A copy of the proposed new note and mortgage shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The 7976 Note, if applicable, shall be in the amount of its Allowed Secured Claim, which claim shall not exceed the market value of 7976's secured interest the 7976 Property. From Effective Date forward, interest will accrue at the Confirmation Rate. Interest will accrue and principal and interest paid as set forth herein based on a thirty (30) year amortization with a final maturity of forty-eight (48) months from the Effective Date. All payments made during the Chapter 11 shall reduce, dollar for dollar, the principal amount of the Class 2 Claim.

7976 shall receive a Class 12 Allowed Unsecured Claim for the difference, if any, between the 7976's Allowed Claim and its Allowed Secured Claim.

The Reorganized Debtor shall remain current on all taxes, subject to challenges by the Debtors for market conditions and taxing authority's property valuation. The Reorganized Debtor shall remain current on all appropriate insurance policies to extent obligated, list 7976 as a loss payee, and provide proof of the same to 7976.

The 7976 Note will have standard and commercially reasonable default provisions, and 7976 will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure. If said Default is not remedied within said 10 day period, the new note will provide for customary remedies. A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

D.    Class 3 – Florida Capital Bank, N.A.

In full satisfaction of its Allowed Class 3 Claim, Florida Capital shall retain its liens as stated above and receive a new secured note (the "Florida Capital Note") in the amount of the Allowed Class 3 Claim.    The new note shall be paid through the proceeds of core operations.    A copy of the proposed new note and mortgages shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The Florida Capital Note shall be in the amount of its Allowed Secured Claim, which claim shall not exceed the combined market value of the Florida Capital Bank Property. From Effective Date forward, interest will accrue at the Confirmation Rate.    Interest will accrue and principal and interest paid as set forth herein based on a thirty (30) year amortization with a final maturity of forty-eight (48) months from the Effective Date.    All payments made during the Chapter 11 shall first be applied to accruing interest and then principal.

The amount of the Allowed Secured Claim will be equal to the full amount owed to Florida Capital and there will be no Allowed Unsecured Claim.

The Reorganized Debtor shall remain current on all taxes, subject to challenges by the Debtors for market conditions and taxing authority's property valuation.    The Reorganized Debtor shall remain current on all appropriate insurance policies to extent obligated, list Florida Capital as a loss payee, and provide proof of the same to Florida Capital.

The Florida Capital Note will have standard and commercially reasonable default provisions, and Florida Capital will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure.    If said Default is not remedied within said 10 day period, the new note will provide for customary remedies.    A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

30

E.      <u>Class 4 – Regions Bank</u>.

In full satisfaction of its Allowed Class 4 Claim, Regions shall retain its lien as stated above and, as provided hereafter, Hud-6 shall convey the Regions Bank Property, free and clear of any liens and encumbrances except for ad valorem real estate taxes, to Regions (or its assigns) as the indubitable equivalent of its Allowed Secured Claim. All payments made to Regions during the Case shall be applied to principal.

Regions shall have a Class 12 Allowed Unsecured Claim in an amount equal to the difference between Regions Allowed Claim and its Allowed Secured Claim.

To the extent that the Reorganized Debtor and Regions are able to negotiate agreed terms, the Reorganized Debtor may lease back all, or a portion, of the Regions Bank Property (the "Regions Lease"). If the parties reach agreement with respect to the Regions Lease prior to confirmation, the Reorganized Debtor will file a copy of the proposed lease with the Bankruptcy Court.

F.      <u>Class 5 – GE Commercial Finance</u>.

In full satisfaction of its Allowed Class 5 Claim, GE shall retain its lien as stated above and receive a new secured note (the "GE Note") in the amount of the Allowed Class 5 Claim. The new note shall be paid through the proceeds of core operations. A copy of the proposed new note and mortgage shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The GE Note shall be in the amount of its Allowed Secured Claim, which claim shall not exceed the market value of the GE Bank Property. From Effective Date forward, interest will accrue at the Confirmation Rate. Interest will accrue and principal and interest paid

as set forth herein based on a thirty (30) year amortization with a final maturity of forty-eight (48) months from the Effective Date.

The amount of the Allowed Secured Claim will be equal to the full amount owed to GE and there will be no Allowed Unsecured Claim. All accrued and unpaid interest as of the Effective Date shall be added to the amount of the Allowed Secured Claim and due at maturity.

The Reorganized Debtor shall remain current on all taxes, subject to challenges by the Debtors for market conditions and taxing authority's property valuation. The Reorganized Debtor shall remain current on all appropriate insurance policies to extent obligated, list GE as a loss payee, and provide proof of the same to GE.

The GE Note will have standard and commercially reasonable default provisions, and GE will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure. If said Default is not remedied within said 10 day period, the new note will provide for customary remedies. A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

G.    Class 6 – Compass Bank.

In full satisfaction of its Allowed Class 6 Claim, Compass shall retain its lien as stated above and receive a new secured note (the "Compass Note") in the amount of the Allowed Class 6 Claim. The new note shall be paid through the proceeds of core operations. A copy of the proposed new note and mortgage shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The Compass Note shall be in the amount of its Allowed Secured Claim, which claim shall not exceed the market value of the Compass Bank Property. From Effective Date forward, interest will accrue at the Confirmation Rate. Interest will accrue and principal and

interest paid as set forth herein based on a thirty (30) year amortization with a final maturity of forty-eight (48) months from the Effective Date.

The amount of the Allowed Secured Claim will be equal to the full amount owed to Compass and there will be no Allowed Unsecured Claim Note.

The Reorganized Debtor shall remain current on all taxes, subject to challenges by the Debtors for market conditions and taxing authority's property valuation. The Reorganized Debtor shall remain current on all appropriate insurance policies to extent obligated, list Compass as a loss payee, and provide proof of the same to Compass.

The Compass Note will have standard and commercially reasonable default provisions, and Compass will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure. If said Default is not remedied within said 10 day period, the new note will provide for customary remedies. A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

H.    Class 7 – Furniture Brands International - Broyhill.

In full satisfaction of its Allowed Class 7 Claim, Broyhill shall retain its lien as stated above and receive a new secured note (the "Broyhill Note") in the amount of $1,800,000.00 (the "Allowed Secured Claim"). The new note shall be paid through the proceeds of furniture sales. A copy of the proposed new note and UCC-1 financing statement shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The Broyhill Note shall be in the amount of its Allowed Secured Claim. From Effective Date forward, interest will accrue at the Confirmation Rate. Interest will accrue and

33

principal and interest paid as set forth herein based on a twelve (12) year amortization and a forty-eight (48) month maturity.

Broyhill shall receive a Class 12 Allowed Unsecured Claim for the difference, if any, between the Broyhill Note and its Allowed Claim.

Broyhill shall forbear from exercising any of its rights and/or remedies against guarantor C. Fred Hudson for so long as no default occurs.

On the Effective Date, Broyhill shall return the $400,000 deposit held by Broyhill to the Reorganized Debtor and shall return Reorganized Debtor to standard credit terms provided there is no default under the Broyhill Note.

The Broyhill Note will have standard and commercially reasonable default provisions, and Broyhill will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure. If said Default is not remedied within said 10 day period, the new note will provide for customary remedies. A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

I.     Class 8 – La-Z-Boy Incorporated – La-Z-Boy.

In full satisfaction of its Allowed Class 8 Claim, La-Z-Boy shall retain its lien as stated above and receive a new secured note (the "La-Z-Boy Note") in the amount of the Allowed Class 8 Claim. The new note shall be paid through the proceeds of furniture sales. A copy of the proposed new note and UCC-1 financing statement shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The La-Z-Boy Note shall be in the amount of its Allowed Secured Claim, which claim shall not exceed the combined market value of the La-Z-Boy Security. From Effective Date forward, interest will accrue at the Confirmation Rate. Interest will accrue and principal

and interest paid as set forth herein based on a twelve (12) year amortization and a forty-eight (48) month maturity.

The amount of the Allowed Secured Claim will be equal to the full amount owed to La-Z-Boy and there will be no Allowed Unsecured Claim Note.

La-Z-Boy shall forbear from exercising any of its rights and/or remedies against guarantor C. Fred Hudson for so long as no default occurs.

The La-Z-Boy Note will have standard and commercially reasonable default provisions, and La-Z-Boy will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure. If said Default is not remedied within said 10 day period, the new note will provide for customary remedies. A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

J.    Class 9 – Valley Commercial Capital.

In full satisfaction of its Allowed Class 9 Claim, VCC shall retain its lien as stated above and receive a new secured note (the "VCC Note") in the amount of the Allowed Class 9 Claim. The new note shall be paid through the proceeds of furniture sales. A copy of the proposed new note and UCC financing statement shall be available at least ten (10) days prior to the Confirmation Hearing and will be provided to any party who request such.

The VCC Note shall be in the amount of its Allowed Secured Claim of $1,860,107.30[4]. From Effective Date forward, interest will accrue at the Confirmation Rate. Interest will accrue and principal and interest paid monthly, based on a fifteen (15) year

---

[4] Pursuant to order of the Bankruptcy Court VCC's secured claim is an amount certain. (HFS, Doc. No. 216).

amortization and maturity.  All payments made during the Chapter 11 shall first be applied to accruing interest and then principal.

The amount of the Allowed Secured Claim will be equal to the full amount owed to VCC and there will be no Allowed Unsecured Claim Note.

The VCC Note will have standard and commercially reasonable default provisions, and VCC will provide the Reorganized Debtor ten (10) days notice of any default with a right to cure.  If said Default is not remedied within said 10 day period, the new note will provide for customary remedies.  A copy of proposed loan documents will be available for inspection at least ten (10) days prior to the Confirmation Hearing.

K.    Class 10 – County Tax Collectors.

In full satisfaction of their respective Allowed Secured Claims, the Tax Collectors shall retain their Liens against the applicable Real Property and receive monthly payments based on a thirty (30) year amortization and a forty-eight (48) month maturity with interest at the Statutory Rate.  Payments will commence on the First Business Day of the First Calendar month after the Effective Date and continue each month thereafter.

L.    Class 11 –Tax Certificate Holders.

In full satisfaction of its Allowed Secured Claims, Certificate Holder shall retain its Liens against the Tax Certificate Properties and receive monthly payments based on a thirty (30) year amortization and a forty-eight (48) month maturity with interest at the applicable Tax Certificate Rate.   Payments will commence on the First Business Day of the First Calendar month after the Effective Date and continue each month thereafter.

M.    <u>Class 12 – Allowed Unsecured Claims</u>.

In full satisfaction of their Allowed Unsecured Claims, Holders of Class 12 Claims shall receive a Pro Rata beneficial interest in the Cash Flow Note. The Cash Flow Note will require a quarterly payment equal to seventy-five percent (75%) of the surplus of actual results versus the Operating Budget. The surplus shall be determined quarterly commencing on the First Business Day of the First Calendar month after the Effective Date and continue each quarter thereafter. Distributions under the Cash Flow Note shall be paid within thirty days after the books have been closed for each applicable quarter.[5] The Cash Flow Note shall terminate forty-eight (48) months from the Effective Date, and the associated payment, if applicable, shall occur in accordance with the established closing and distribution schedule.

N.    <u>Class 13 – Hudson's Furniture Showrooms, Inc.</u>

Class 13 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hudson's Furniture Showroom, LLC. All currently issued and outstanding Equity Interests in the Hudson's Furniture Showroom shall be vested in Joshua L. Hudson (50%) and Adam C. Hudson (50%).

O.    <u>Class 14 – Hud-One, LLC</u>.

Class 14 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-One. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-One shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 14 Interests,

---

[5] For example, if the Effective Date falls on the 21st day of February, then the first quarterly period would commence on March 1 and continue through May 31. Assuming the accounting is completed and the books are closed on the June 18th, then the Reorganized Debtor will make its first Distribution under the Cash Flow Note on or before July 18.

except to the extent that they are entitled to Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

P.    Class 15 – Hud-Three, LLC.

Class 15 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-Three, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-Three, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 15 Interests, except to the extent that they are entitled to Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

Q.    Class 16 – Hud-Six, LLC

Class 16 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-Six, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-Six, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 16 Interests, except to the extent that they are entitled to Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

R.    Class 17 – Hud-Ten, LLC

Class 17 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-Ten, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-Ten, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 17 Interests, except to the extent that they are entitled to Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

S.    <u>Class 18 – Hud-Twenty-Two, LLC</u>.

Class 18 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-Twenty-Two, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-Twenty-Two, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 18 Interests, except to the extent that they are entitled to Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

T.    <u>Class 19 – Hud-Twenty-Four 445 S. Yonge, LLC</u>.

Class 19 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-Twenty-Four 445 S. Yonge, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-Twenty-Four 445 S. Yonge shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 19 Interests, except to the extent that they are entitled to Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

U.    <u>Class 20 - Hud-Twenty-Seven Mason, LLC</u>.

Class 20 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Hud-Twenty-Seven Mason, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hud-Twenty-Seven Mason, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 20 Interests, except to the extent that they are entitled to

Distribution or as other provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtor.

## ARTICLE VI - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

The Plan provides that the Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected by such date, then such unexpired lease or executory contract shall be deemed rejected. It is the position of the Debtors that the executory contracts listed in the respective Schedules of Executory Contracts filed pursuant to Rule 1007, are the only executory contracts to which any of the Debtors was a party on the Petition Date. The Plan also provides for the Court to retain jurisdiction as to certain matters as stated in the Plan, including, without limitation, prosecution of all Causes of Action and objection to Claims.

To the extent any executory contract or lease is rejected by operation of this provision, any party asserting a Claim, pursuant to Sections 365 and 502(g) of the Code, arising from such rejection shall file a proof of such Claim within thirty (30) days after the entry of an Order Confirming the Plan, and any Allowed Claim resulting from such rejection shall be a Class 12 Claim except as otherwise provided herein. To the extent any executory contracts or leases are assumed, pursuant to this section, such lease or contract shall, if applicable, be deemed assigned to the Reorganized Debtor.

## ARTICLE VII. - MEANS OF IMPLEMENTATION.

1.    Business Operations and Cash flow.

The Plan contemplates that the Hud Affiliates will merge into HFS as the surviving entity. HFS, the Reorganized Debtor will continue to operate its reorganized business,

40

with low operating expenses. The Plan contemplates that the Reorganized Debtor shall execute new notes, mortgages, and security agreements with its secured creditors; provided, however, at the option of the lender, Reorganized Debtor shall simply affirm and modify existing documents. The Debtors believe the cash flow generated from core operations along with a reduction in cash flow demands from the New Secured Obligations will be sufficient to meet operating needs and required Plan Payments.

      2.    <u>Funds Generated During Chapter 11</u>.

      All cash in excess of operating expenses generated from operations until the Effective Date will be used for Plan Payments.

      3.    <u>Merger of Hud Affiliates into HFS</u>.

      In light of the Debtors' unique corporate structure and conduct of their business affairs, the Plan proposes, and its terms embody, the statutory merger of the Hud Affiliates into HFS, which entity shall survive as the Reorganized Debtor. The emergence of a single Reorganized Debtor reflects the Debtors focus on economic and management efficiency going forward.

      4.    <u>Management and Control of Reorganized Debtor</u>.

        i.<u>Directors</u>.

      The operations of the Reorganized Debtor shall be overseen by its Board of Directors. The Board of Directors shall have the power to request and obtain all financial data and operational information regarding the Reorganized Debtor at any time. The Board of Directors shall have all corporate authority vested in boards of directors under the applicable laws of the State of Florida including the power to appoint and terminate officers and

to liquidate the Reorganized Debtor and to wind up its affairs, with all such powers to be exercised by a majority vote.

Messrs. C. Fred Hudson, Joshua L. Hudson and Adam C. Hudson shall serve as initial directors. Mr. C. Fred Hudson shall serve as Chairman of the Board. The initial Directors shall continue to serve until either (i) Reorganized Debtor ceases to do business, or (ii) a Director resigns or is replaced by the shareholders in accordance with Florida law. The Directors shall be entitled to receive reasonable compensation.

ii.Officers.

No officer of Reorganized Debtor shall have the authority to sell substantially all of the assets of Reorganized Debtor or to liquidate Reorganized Debtor unless a majority of the Directors of Reorganized Debtor approves such actions. Should a majority of the Directors of Reorganized Debtor instruct the officers of Reorganized Debtor to take such actions, the officers of Reorganized Debtor shall follow such instructions to the best of their abilities.

Mr. C. Fred Hudson shall be the initial Chief Executive Officer of Reorganized Debtor, and Mr. Joshua L. Hudson shall be the President of Reorganized Debtor. Mr. Adam C. Hudson shall be the Vice President and Secretary. After discussions with several of the Debtors secured creditors, it is Reorganized Debtor's belief that the continued involvement of the officers is a condition precedent to the concessions received herein from the secured creditors and lenders and is crucial to Reorganized Debtor's go-forward success. In addition to Mr. C. Fred Hudson's role in developing and coordinating the plan set forth herein, he has absorbed several job functions post-filing, implemented numerous corporate and overhead cost controls and has established a small management team that reports directly to Mr. C. Fred Hudson in executing the day to day operational strategy.

In light of the foregoing, coupled with Mr. C. Fred Hudson's intimate knowledge of Reorganized Debtor's operations and critical role in the continued operations of the Reorganized Debtor, the continued employment of Mr. C. Fred Hudson is a critical prerequisite to Reorganized Debtor's feasibility.

The President shall have authority to conduct the operations of Reorganized Debtor and shall delegate such authority to other officers as the Board of Directors may direct. The President, Chief Financial Officer, and Vice President of Reorganized Debtor shall have the powers, duties, and responsibilities typically held by such officers in companies similar to Reorganized Debtor and, in addition, shall be responsible for promptly providing any Director with all information regarding Reorganized Debtor which such Director may request. The officers of Reorganized Debtor shall be entitled to reasonable compensation as determined by respective management contracts, and, if no contract exists, as fixed by the Board of Directors.

5.      Reorganized Debtor.

After Confirmation, the common stock of the Equity Holders shall remain as set forth herein. The current officers and directors of the Reorganized Debtor shall remain as set forth herein.

6.      Disbursements.

All Disbursements made pursuant to this Plan shall be paid by the Reorganized Debtor from cash flow generated by core operations.

7.    Procedures For Resolving Disputed Claims.

   a.    Prosecution of Objections to Claims.

           Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtors or Reorganized Debtor shall have the exclusive right to make and file objections to all Claims.    All objections commenced prior to Confirmation Date shall be finished by the Reorganized Debtor.

           Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Confirmation Date.

           Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, any Debtor had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that any Debtor had immediately prior to the commencement of the Chapter 11 Cases as if the Chapter 11 Cases had not been commenced.

   b.    Estimation of Claims.

           Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Code regardless of whether the Debtors have previously objected to such

Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.    In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

<p style="text-align:center;">c. <u>Cumulative Remedies</u>.</p>

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.   Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

<p style="text-align:center;">d. <u>Payments and Distributions on Disputed Claims</u>.</p>

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial

payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

        e.     <u>Allowance of Claims and Interests</u>.

        (i).     Disallowance of Claims

According to the Plan, all Claims held by Entities against whom any Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code ("Causes of Action") shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the related Debtor by that Entity are turned over to such Debtor.  Debtors reserve and shall have the exclusive right and authority to bring any Causes of Action.

        (ii).   <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest.

f.      Controversy Concerning Impairment.

If a controversy arises as to whether any Claim or Equity Interest or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

## ARTICLE VIII. - MISCELLANEOUS.

A.      Effect of Confirmation.

1.      Retention of Equity.

On the Effective Date, by consent of the existing Holders, the Hud Affiliates shall be merged into HFS, which entity shall remain as the Reorganized Debtor. The Equity Interests of the Hud Affiliates shall be canceled and of no further force or effect. The Equity Interests of HFS shall be vested in Joshua L. Hudson (50%) and Adam C. Hudson (50%).

2.      Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying Debtors' by-laws such that the provisions of this Joint Plan can be effectuated. Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

3.    <u>Post-Confirmation Status Report.</u>

Pursuant to the Joint Plan, within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

4.    <u>Preservation, Prosecution and Defense of Causes of Action.</u>

The Debtors, or Reorganized Debtor, shall retain all Causes of Action. The Debtors, or Reorganized Debtor, shall have the right to pursue any and all Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date. The Debtors, or Reorganized Debtor, shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Debtors, or Reorganized Debtor; provided, however, that the Debtors, or Reorganized Debtor, shall be authorized at any point in any litigation (a) to enter into such settlements as the Debtors', or Reorganized Debtor, deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation.

B.    <u>Conditions to Effectiveness.</u>

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.    The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors, or Reorganized Debtor, and expiration of the appeal period

44

with respect to the Confirmation Order without the filing of a notice of appeal of such Order; provided, however, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors, or Reorganized Debtor, may elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

    2.  Inclusion in the Confirmation Order of an injunctive provision: staying, restraining, and enjoining all individuals or entities, from commencing, enforcing, perfecting, or setting off any claim, judgment, or interest against the Debtors, or any property thereof, or against any of Debtors' transferees, including the Reorganized Debtor, for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest.

    Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

  C.  <u>Police Power</u>.

    Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors, or any Debtor, for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

  D.  <u>Retention of Jurisdiction</u>.

    After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to them under the Plan without approval of the Bankruptcy Court, except as

specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

      1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

      2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtors' cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by Reorganized Debtor in the ordinary course of business without a Bankruptcy Court order; provided, further, however, that, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

      3.    Any adversary proceedings or contested matters (except as to Released Claims and Released Parties) brought by the Debtors, including, without limitation, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code;

      4.    All controversies and disputes arising under or in connection with the Plan;

      5.    The enforcement and interpretation of the provisions of the Plan;

      6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the property of the Debtors' Estates from adverse claims or interference inconsistent with the Plan; and

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement.

E.      Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.      Cramdown.

The Reorganized Debtor reserve the right to seek confirmation of the Plan under § 1129(b) of the Code.

G.      Discharge.

As of the Effective Date and pursuant to § 1141 of the Code, the Debtors shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h), and 502(i) of the Code, whether or not:

1.      A proof of claim based upon such debt is filed or deemed filed under § 501 of the Code;

2.      A Claim based upon such debt is allowed under § 502 of the Code; or

47

3.    The holder of a Claim or Interest based upon such debt has accepted the Plan.

H.    <u>Regulatory Approval and Retirement Plans</u>.

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code. The Debtors do not have any retirement plans.

I.    <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

<u>Counsel for the Debtors</u>:

R. Scott Shuker, Esquire
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801

<u>Debtors</u>:

Hudson's Furniture Showroom, Inc.
Attn: C. Fred Hudson, III
3290 W. SR 46
Sanford, FL 32771

<u>United States Trustee</u>:

United States Trustee
135 West Central Blvd.
Suite 620
Orlando, Florida 32801

J.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor, as applicable. Any payments remaining unclaimed after 180 days from the distribution of such payment shall become property of Reorganized Debtor, except that any payments to holders of Allowed Class 12 Claims shall be redistributed to holders of Allowed Class 12 Claims as part of the next Distribution.

K.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by Reorganized Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

L.    Transmittal of Distributions to Parties Entitled Thereto.

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the applicable Debtor's books and records.

M.    Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan which is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution together with all interest earned thereon shall become the property of Reorganized Debtor, except that any payments to holders of Allowed Class 12 Claims shall be redistributed to holders of Allowed Class 12 Claims as part of the next Distribution. Thereafter, any unclaimed funds to holders of Allowed Class 12 Claims shall become property of Reorganized Debtor. However, checks issued by the Reorganized Debtor will be null and void if not cashed within sixty days of the date of issuance.

N.      Fractional Cents and Equity; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents or distribution of fractional equity will be made under this Plan.  Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent).  To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as unclaimed property under the Plan.

O.      Transfer Taxes.

Under § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, including the documents and instruments with respect to the ownership of the Debtors under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

P.      Injunction.

1.      Recipient

C. Fred Hudson is the president, chairman of the board of directors, and the ultimate controlling person, of each of the Debtors.  C. Fred Hudson has been involved with the acquisition and development of each of the Debtors' properties and business operations since their inception.  As a consequence of his intricate involvement with the Debtors' business development and financial affairs, C. Fred Hudson is obligated on numerous direct, limited, or conditional guarantees of the Debtors' financial obligations, and as a result is liable under those contractual undertakings as accommodation parties for the Debtors or as direct obligations on account of credit obtained for the benefit of the Debtors on substantially all of the Debtors' business and operational indebtedness.  Additionally, by reason of his status as an officer, director, and control person of the Debtors' business activities, C. Fred Hudson risks exposure to potential litigation related to claims arising from the Debtors' operations.  C. Fred Hudson

51

estimates his potential exposure on contractual recourse liability for the Debtors' business obligations and other Debtor related non-contractual claims to exceeds $60,000,000.00.

The Debtors believe that C. Fred Hudson has contributed significant value to the Debtors' estates, and will continue to contribute value to the Reorganized Debtor.

On the Effective Date of the Plan, C. Fred Hudson has will also waive his direct or indirect Claims against the Debtors in full. In consideration of the substantial contributions made and to be made by C. Fred Hudson, the Plan contemplates the granting of broad, conditional third-party injunctions of pursuit against C. Fred Hudson of claims arising out of and deriving from the business operations and financial affairs of the Debtors.

2.    Conditional Injunction

The Plan is premised upon the injunctions contained below. Debtors assert the injunctions are being given as consideration for the accommodations provided by C. Fred Hudson under the Plan and are fair consideration for property contributed and valuable services. The Debtors further believe that unless the settlement is binding on all parties through confirmation of the Plan, protracted and costly litigation would ensue, distributions to Creditors would be substantially delayed and the Debtors would not be restructured and reorganized.

Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan, as of the Confirmation Date, all Persons that have held, currently hold or may hold a Claim, other debt or liability, an Interest, or other right of an equity security that is impaired or terminated pursuant to the terms of the Plan, to the fullest extent permitted by applicable law, are enjoined from taking any of the following actions, as long as Reorganized Debtor, C. Fred Hudson, III, and the C. Fred Hudson III Trust are not in default of any obligation under the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan,

on account of any such impaired or terminated Claims, debts or liabilities, Interests or rights: (i) commencing or continuing in any manner any action or proceeding against C. Fred Hudson, or his property interests, other than to enforce any right pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against C. Fred Hudson, or his property interests, other than as permitted pursuant to (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against C. Fred Hudson, or his property interests; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to C. Fred Hudson; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

From and after the Confirmation Date, the Injunctions described Article V in the Disclosure Statement and Article VIII(P) herein shall become effective, and all Holders of Claims and Interests shall be enjoined from commencing or continuing any of the actions detailed herein for so long as Reorganized Debtor, C. Fred Hudson, III, and the C. Fred Hudson III Trust remain in compliance with the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan.

Q.    Revocation and Withdrawal of the Plan.

The Debtors reserve the right to withdraw the Plan at any time before entry of the Confirmation Order. If: (i) the Debtors revoke and withdraw this Plan; (ii) the Confirmation Order is not entered; (iii) the Effective Date does not occur; (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

R.    <u>Modification of Plan</u>

The Reorganized Debtor may seek to amend or modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy and defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before the Effective Date, the Reorganized Debtor may issue, execute, deliver, or file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate, and further evidence the terms and conditions of the Plan.

**DATED** this 24th day of September, 2010.

<div style="margin-left:40%">

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No. 0984469
Victoria Kothari
Florida Bar No. 0730831
**Latham, Shuker, Eden & Beaudine, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
Attorneys for the Debtors

</div>

## Exhibit A

### LIST OF DEBTORS

| Debtor | Case Number | Entity |
|---|---|---|
| In re Hudson's Furniture Showroom, LLC | Case No. 6:10-bk-03322-KSJ | Main |
| In re Hud-One, LLC | Case No. 6:10-bk-03543-KSJ | Affiliate |
| In re Hud-Three, LLC | Case No. 6:10-bk-03544-KSJ | Affiliate |
| In re Hud-Six, LLC | Case No. 6:10-bk-03545-KSJ | Affiliate |
| In re Hud-Ten, LLC | Case No. 6:10-bk-03546-KSJ | Affiliate |
| In re Hud- Twenty-Two, LLC | Case No. 6:10-bk-03547-KSJ | Affiliate |
| In re Hud-Twenty-Four 445 S. Yonge, LLC | Case No. 6:10-bk-03548-KSJ | Affiliate |
| In re Hud-Twenty-Seven Mason, LLC | Case No. 6:10-bk-03549-KSJ | Affiliate |

**Exhibit B**

## List of the Debtors' Real Properties

| DEBTOR | PROPERTY ADDRESS | RETAIL SPACE | TENANT |
|---|---|---|---|
| HFS | 3290 W. SR 46, Sanford, FL 32771 | 131,132± sq. ft. of distribution / warehouse / showroom space | HFS |
| HFS | 8796 S. Tamiami Trail, Sarasota County FL, 34231 | 34,384± sq. ft. of retail/showroom space | HFS |
| HFS | 9539 S. OBT, Orlando, FL 32837 | 14,100± sq. ft. of retail space | HFS |
| HFS | 684 E. Altamonte Dr, Altamonte Springs, FL 32701 | 14,701± sq. ft. of retail space | Office Environments |
| HFS | 11221 E. Colonial Dr, Orlando, FL 32817 | 15,498± sq. ft. of retail space | HFS |
| HFS | 28342 US Hwy 19, Clearwater, FL | | |
| HUD-1 | 3300 & 3320 W SR 46, Sanford, FL 32771 | | |
| HUD-1 | 3310 W. SR 46, Sanford, FL 32771 | 4.24± Gross Acres with two buildings containing 10,580 sq. ft. of retail. (Very poor condition – appraisal at land value only) | (1) 4,180± sq. ft – Utility Trailer Retail Store; (2) 6,400± sq. ft - Vacant |
| HUD-3 | 4955 S. Florida Ave., Lakeland, FL 33813 | 31,254± sq. ft. of showroom/warehouse space | HFS |
| HUD-6 | 4260 W. New Haven Ave., Melbourne, FL | | |
| HUD-22 | 9001 US Highway 19, N. Pinellas Park, FL | | |
| HUD-24 | 445 S. Yonge Street, Ormond Beach, FL | | |
| HUD-27 | 1640 Mason Ave., Daytona Beach, FL 32114 | 35,200± sq. ft. dock height, multi-tenant office / warehouse space | HFS |

## Exhibit C

### TRANSFERRED PROPERTIES

| Debtor | Property |
|---|---|
| HUD-1 | 3310 W. SR 46, Sanford, FL 32771 |
| HUD-27 | 1640 Mason Ave., Daytona Beach, FL 32114 |
| Hud-Fourteen, LLC | Vacant commercial lot on the west side of Orange Blossom Trail in Orlando, Florida[6] |

---

[6] Note – This property is being transferred by a non-debtor entity.  Hud-Fourteen, LLC, a non-debtor, is affiliated and related to the Debtors.